IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE SEPULVEDA, | : | CIVIL NO. 1:14-CV-135 |
| | : | |
| Petitioner, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN EBBERT, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

#### A.  Introduction

This case involves a habeas corpus petition by a federal inmate who is serving a life sentence for crimes which included a murderous effort to obstruct justice. Having been convicted of this lethal obstruction of justice, the petitioner challenges the outcome of a disciplinary proceeding that resulted in a finding of guilt for yet another serious attempt to obstruct justice, an effort to lodge bogus liens totaling more than $7,000,000,000 against the judicial officers, prosecutor and court officials who participated in the petitioner's prior criminal case. Specifically, the petitioner, George Sepulveda, a federal inmate, invites us to examine the results of a prison disciplinary hearing which led to the forfeiture of good time and other sanctions for this federal

1

prisoner following his disciplinary citation for this grave act of institutional misconduct.   Because we find that Sepulveda was afforded a full panoply of procedural protections in this disciplinary hearing, conclude that there is sufficient evidence to support the prison's finding of misconduct, and find that the punishment imposed upon Sepulveda was commensurate with his misdeeds, it is recommended that this petition be denied.

### B.    DHO Proceedings

The pertinent facts in this case can be simply stated:

The petitioner in this case, George Sepulveda, is a convicted murderer and reputed leader of a violent criminal street gang, the Almighty Latin Kings Nation, who is serving multiple life sentences in this district after his convictions for racketeering, conspiracy to commit racketeering, murder in aid of racketeering, witness intimidation, and being a felon in possessing firearms, convictions which were subsequently affirmed by the United States Court of Appeals for the First Circuit. United States v. Lara, 181 F.3d 183, 190 (1st Cir. 1999).  These charges of conviction for Sepulveda include charges relating to Sepulveda's role in the murder of a police informant and potential witness, the most serious and grave form of obstruction of justice imaginable.

It is against this backdrop that the Bureau of Prisons conducted disciplinary proceedings relating to what was alleged to have been another attempt to Sepulveda to obstruct justice, and intimidate participants in the legal process.  Specifically, in 2011 prison officials conducted an investigation into allegations that Sepulveda engaged in criminal abuse of the inmate mail system in an attempt to extort money from named government officials.  (Doc. 14, Ex. 1 (Declaration of Michael Figgs Ganter) ¶ 3; pp. 3-33 (Incident Report #2250280 and supporting documentation)).  This investigation disclosed that Sepulveda caused outgoing packages to be mailed to various third parties.  (Id. at 3, § 11.)  These packages:

> contained fraudulent documents which were determined to be 'notarial protest', where through a series of documents presented in sequence of increasing threats, a government official is put on notice of a private commercial matter between him/her and the sovereign which must be resolved through the notary public.  In the documents sent, inmate Sepulveda stated that the failure to settle the process could result in their agreement to the monetary demands or filing a lien against the government official for the purported debt.

(Id.)

The recipients of these packages were participants in Sepulveda's prior legal proceedings and included a United States District Judge, an Assistant United States Attorney, a court clerk, and a deputy clerk.  The total aggregate amount of the alleged fraudulent debts claimed by Sepulveda was $7,348,100,000.00, and Sepulveda

demanded that the named officials deliver on the requested payment within ten days. (Id.) Due to the gravity of this misconduct, which apparently involved acts targeting court officers, the Bureau of Prisons' Counter Terrorism Unit (CTU) was notified and provided with all documents for further review. (Id. at 3 (Incident Report), 12-15 (Inmate Investigative Report)). Review of these mailed materials revealed that these documents were fraudulent Uniform Commercial Code (UCC) documents which attempted to establish personal liens against the named governmental officials. (Id.) As part of this investigation on November 9, 2011, Sepulveda was interviewed about this matter and admitted sending and receiving these fraudulent UCC documents to hopefully obtain an early release from custody. (Id. at 3, 14.)

On December 29, 2011, as a result of this investigation, prison officials issued an incident report to Sepulveda charging him Use of the Mail for Illegal Purposes and Extortion. (Id., Ex. 1 at 3, §§ 12-13.) Sepulveda was provided with a copy of the incident report on December 30, 2011, by Acting Lieutenant T. Galella, who also investigated the incident report. (Id., §§ 14-6.) Lieutenant Galella advised Sepulveda of his rights the same day. (Id. at 4, §§ 23-24.) Sepulveda acknowledged he understood his rights and was afforded the chance to make a statement. (Id.).

These allegations of misconduct were then referred to the prison's Unit Disciplinary Committee (UDC) for further action. (Id. at 4, § 27.) Sepulveda

appeared before the UDC on January 3, 2012, and provided the UDC with a written statement. (Id. at 3, § 21; 5, § 17; 6-7.) Throughout these proceedings, Sepulveda has taken a consistent approach to these charges of misconduct, acknowledging that he played a role in the events which led to the submission of more than $7,000,000,000 in fraudulent liens to the prosecutor and court participants in his prior cases, but denying that he was aware that the submission of such false and fraudulent claims was wrongful or inappropriate.

After consideration of the allegations, the proof, and Sepulveda's explanation, the UDC referred these charges to a Disciplinary Hearing Officer, (DHO) for further hearings. (Id. at 5, §§ 19-20.) Sepulveda was again advised of his rights and was given notice of his hearing before the DHO at this time. (Id. at 8 (Notice of Discipline Hearing Before the DHO); 9 (Inmate Rights at Discipline Hearing)). In response to this notice, Sepulveda indicated he did not wish to call any witnesses or request a staff representative. (Id. at 8 (Notice of Discipline Hearing Before the DHO)). While Sepulveda refused to sign these forms verifying that he was advised of his rights, prison staff completed the section of the form affirming that staff had personally advised Sepulveda of his rights. (Id. at 8 (Notice of Discipline Hearing Before the DHO); 9 (Inmate Rights at Discipline Hearing)).

On January 5, 2012, Sepulveda received a final DHO Hearing on this disciplinary matter. (Id., Ex. 1 at 34-41 (DHO Report)). At the outset of this DHO hearing Sepulveda was advised of his rights by the DHO indicated he understood those rights. (Id. at 35.) Sepulveda then, once again, waived his right to call witnesses or to have a staff representative. (Id.) When questioned during the hearing by the DHO, Sepulveda admitted composing and sending the fraudulent documents and stated, "I didn't know. I thought it was legal." (Id. at 35, 37.) At the close of the hearing, in addition to Sepulveda's statement, the DHO considered the Incident Report and investigation, the Inmate Investigative Report, the fraudulent documents mailed to the government officials, and the written statement previously submitted by Sepulveda to the UDC. (Id. at 37-38.) After considering all of these materials, the DHO determined that Sepulveda had attempted to utilize the institutional mail system as a vehicle to extort, threaten or coerce, through monetary demands and fraudulent filings, a United States District Court Judge, Assistant United States Attorney and other separately named governmental officials with the intention of obtaining a fraudulent release from custody. (Id., Ex. 1 at 38-40, § V.) Based upon the greater weight of the evidence, the DHO then found that Sepulveda committed the prohibited act of Use of Mail for an Illegal Purpose or to Commit or Further a Greatest Prohibited Act in violation of Code 196. The DHO sanctioned Sepulveda to a disallowance of

forty (40) days of good conduct time, 360 days of disciplinary segregation, impound of property for twelve (12) months, loss of telephone, visiting, TRULINCS, and commissary privileges for ten (10) years, and loss of recreation privileges for six (6) months. (Id. at 41.)  Sepulveda was sent a copy of the DHO report on February 7, 2012. (Id. at 41, § IX.)  According to the petition, a copy was also provided to him, at his request, on March 30, 2012, by his Case Manager.  This report notified Sepulveda of his administrative appeal rights, and the respondents concede that Sepulveda exhausted those rights before filing this federal habeas corpus petition.

This habeas corpus petition followed. (Doc. 1.)  This matter is now fully briefed by the parties, and is, therefore, ripe for resolution.  For the reasons set forth below, it is recommended that this petition be denied.

## II.   Discussion

### A.   This Petition Fails on Its Merits

Considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition Sepulveda launches a three-fold constitutional assault upon this prison disciplinary decision:  first, challenging that disciplinary process generally on procedural due process grounds; then asserting that the decision is substantively flawed since there is insufficient evidence to support a

finding of misconduct on his part; before finally contending that the penalty imposed upon him was unconstitutionally excessive.  Sepulveda faces an exacting and precise burden of proof in advancing each of these constitutional claims.

### 1.      Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974).  The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the

disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.5.[1]

_____

[1]The BOP revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011. While the numbering of the regulations have changed,

After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.7.  The inmate, in turn, is entitled to notice of any proposed violation.  The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearings.  28 C.F.R. §541.7(a).  The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.8.  This DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.8.

Throughout this hearing process the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, prison staff must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. §541.8(c).  Upon request, the inmate is also entitled to assistance at DHO hearings. 28 C.F.R. § 541.8(d).

-----

the substance of the regulations basically remained the same with respect to the disciplinary review process.  Townsend v. Warden, FCC Lewisburg, 3:CV-12-0636, 2013 WL 371930 (M.D. Pa. Jan. 30, 2013)

Additionally, the inmate has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.8(f), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.8(e).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. Furthermore, the record must include a brief statement of the reasons for the sanction imposed. A copy of this record must then be delivered to the inmate. 28 C.F.R. §541.8(h).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same). Furthermore, absent a showing a prejudice, an inmate cannot transform regulatory compliance concerns into a due process violation since a petitioner "cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him. See Wilson v. Ashcroft, 350 F.3d 377, 380–81 (3d Cir.2003)." Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012).

## 2.   Substantive Standards Governing DHO Decisions

In his habeas petition, Sepulveda also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support a finding of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports

12

with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Accordingly, in order to pass constitutional muster a "disciplinary decision must [simply] be supported by 'some evidence,' that is, 'any evidence in the record that could support the conclusion reached by the disciplinary board.' " Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we need not examine the entire record, re-weigh the evidence, or independently assess witness credibility in assessing whether the 'some evidence' standard is met.") Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. See e.g., McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011);

14

Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011); Fiore v. Lindsay, 336 F. App'x

168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.

App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir.

2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski,

252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### 3.   Excessive Punishment

Finally, to the extent that Sepulveda complains that he has received excessive

punishment for these alleged prison infractions, this claim also must meet an exacting

standard of proof.   Typically, "[t]he Eighth Amendment is violated only when a

punishment is grossly disproportionate to the severity of the offense.  See  Rummel

v. Estelle, 445 U.S. 263, 271-74, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)." Levi v.

Holt, 192 F. App'x 158, 162 (3d Cir. 2006).  Therefore, only sanctions  that "impose

[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life," may be deemed excessive.  Moles v. Holt, 221 F. App'x 92, 95 (3d Cir.

2007) citing Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418

(1995) (invalidating sanctions that "impose [ ] atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life").   Applying these

benchmarks, courts have sustained significant sanctions for severe prison misconduct,

provided that those sanctions fall within the range of penalties prescribed by prison

regulations of the infractions at issue.  See e.g.. Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175-76 (3d Cir. 20070(two year loss of privileges); Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006). ("The sanctions imposed here conform to the sanctions permitted for high severity offenses, such as Code 205. 28 C.F.R. § 541.13, Table 3"); Hammock v. Nash, No. CIV. 4:CV-04-1981, 2005 WL 2562295, at *6 (M.D. Pa. Oct. 11, 2005).  For example, courts have frequently upheld lengthy denials of privileges, like those imposed here, as sanctions for serious institutional misconduct, provided those penalties fell within the range of sanctions authorized by prison rules,  reasoning that "the loss of privileges sanction do not work an 'atypical and significant hardship' on [the petitioner], and do not serve to extend his confinement beyond the expected parameters of his sentence.  See Sandin v. Connor, 515 U.S. 472, 484–85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." Passe v. Grondolsky, No. CIV 09 1209 (NLH), 2010 WL 1539821, at *7 (D.N.J. Apr. 14, 2010)(9 year loss of privileges); see also Ricco v. Conner, 146 F. App'x 249, 255 (10th Cir. 2005)(upholding five-year visitation restriction).

### B.   Sepulveda Was Afforded His Procedural Due Process Rights at the DHO Hearing, the DHO Finding of Misconduct is Supported By Adequate Evidence, and the Penalties imposed Were Not Unconstitutionally Severe

Judged against these standards, Sepulveda's procedural and substantive challenges to this prison disciplinary proceeding simply fail.  First, with respect to any

procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated.  Sepulveda received advance, written notice of the proposed disciplinary charges against him.   Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses.  In this case, Sepulveda either exercised those rights, or expressly waived the rights he had in connection with this disciplinary hearing.  Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded Sepulveda his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceedings, the petitioner offers little to support this claim beyond  a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation.  Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009).  Thus, the record of these disciplinary proceedings affirmatively reveals that Sepulveda was given all of the procedural protections that due process requires in this setting since he was afforded:  (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary

evidence as part of a defense;[2] and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to Sepulveda during these proceedings, any procedural due process claims simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can Sepulveda successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision is adequately supported by "some evidence" in the record. Indeed, with respect to this issue, the DHO decision entailed the most basic of fact-finding determinations: an assessment of witness credibility. In this regard, the DHO was presented with the essentially undisputed fact that Sepulveda had set in motion a series of events which led to the submission of more than $7,000,000,000 in bogus liens against court officers and the prosecutor who had

---

[2]Sepulevda complains that he was unable to call a correctional staff member Officer Cali, as a witness, but the substance of what Officer Cali could have testified top was fully set forth in the materials considered by the DHO, and was available to the DHO at the time of his decision. Therefore, we perceive no prejudice to Sepulveda from the failure of the DHO to allow this cumulative evidence.

been involved in his underlying case.  This act had a plainly intimidating aspect to it, particularly coming from the petitioner, who is serving multiple life sentences for various crimes, including the slaying of a potential witness.

Given the undisputed fact that Sepulveda caused these potentially harmful acts to take place targeting the judge, judicial officers and the prosecutor in his prior case, the sole disputed issue in this matter was the question of Sepulveda's subjective intent when he tried to lodge billions of dollars in fraudulent liens against these court officials and judicial officers.  Given the magnitude of Sepulveda's actions, and the gravity of the potential harms that flowed form those actions, the DHO reasonably concluded that Sepulveda meant his harmful acts, and justifiably discounted Sepulveda's assertion that he believed that his conduct was somehow lawful.  Indeed, Sepulveda's claim that he lacked any malicious intent strains credulity.  Sepulveda was the leader of a large criminal syndicate, who had been convicted of acts of obstruction of justice in the past.  Given Sepulveda's criminal sophistication, and past penchant for intimidating acts of obstruction of justice, it is difficult to credit his assertion that he thought he could lawfully send these extortionate financial demands to court officers.  Therefore, the DHO properly rejected this claim.  In fact, this finding regarding Sepulveda's intent was entirely reasonable given the evidence presented in this case, and since the "some evidence" standard of "does not require examination of

the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but only entails a determination "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the DHO is fatal to Sepulveda's claims in this petition.

Accordingly, on these facts, we conclude that there was some evidence to support this disciplinary finding.  Since there is an adequate factual basis for that disciplinary finding, Sepulveda's substantive challenge to this disciplinary action should also be rejected.  See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Finally, Sepulveda cannot be heard to complain that the penalties imposed upon him for these prison infractions were unconstitutionally excessive.  In this regard, it is important to note that the background of this prisoner, and the factual context of his misconduct, all called out for severe sanctions.  George Sepulveda is in federal prison, in part, because he has been convicted of relying on murderous violence to attempt to obstruct justice.  In this disciplinary proceeding, prison officials justifiably concluded

that Sepulveda continued to try to engage in massive efforts to strike back at, and

intimidate, those who had participated in some way in his prior cases by attempting

to submit claims and liens of more than $7,000,000,000 against these officials.

Sepulveda's conduct was antithetical to the animating goals of our justice system, and

his repeated efforts at intimidation warranted the most severe of penalties.

Further, while the sanctions meted out by the DHO were undeniably strict, the

offenses for which Sepulveda was convicted fall among the most severe in the Bureau

of Prisons' disciplinary system.  See 28 C.F.R. §541.3.  Further, the sanctions imposed

here fell within the range of penalties authorized by these prison regulations for

Greatest Severity prison infractions like those committed by Sepulveda.  Thus, the

prison regulations expressly allowed for denial of  forty (40) days of good conduct

time, 360 days of disciplinary segregation, impound of property for twelve (12)

months, loss of telephone, visiting, TRULINCS, and commissary privileges for ten

(10) years, and loss of recreation privileges for six (6) months.

In particular, these regulations prescribe the following sanctions for Greatest

Severity Level Prohibited Acts:  Disallowance of between 50% and 75% (27-41 days)

of good conduct time credit available for year; disciplinary segregation for up to 12

months; loss of privileges including visiting, telephone, commissary, movies, and

recreation; and impounding of an  inmate's personal property.  28 C.F.R. § 541.3.

Thus, in every respect to penalty actually imposed by the DHO was expressly authorized by prison regulations for greatest severity offenses like those committed by Sepulveda.  Furthermore, the lengthy restrictions on outside privileges imposed here were rationally related to the goal of deterring future misconduct since Sepulveda had used these communication privileges in the past  to promote this extortionate effort.  Furthermore, the restrictions imposed by the DHO did not deny Sepulveda all avenues of outside communication.  Thus, while his visitation and telephone were curtailed, there is no indication that Sepulveda has been denied mail privileges.  Since the penalties imposed here fell squarely within the range of sanctions authorized by prison rules, see e.g., Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175-76 (3d Cir. 20070(two year loss of privileges); Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006). ("The sanctions imposed here conform to the sanctions permitted for high severity offenses, such as Code 205. 28 C.F.R. § 541.13, Table 3"); Hammock v. Nash, No. CIV. 4:CV-04-1981, 2005 WL 2562295, at *6 (M.D. Pa. Oct. 11, 2005), and were a reasonable response to unrelenting attacks by Sepulveda upon the legal system and those who serve it, Sepulveda's excessive punishment claim also fails and should be denied.

### III.   <u>**Recommendation**</u>

Accordingly, for the foregoing reasons, upon consideration of the merits of this

Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be

DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may  accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of April, 2015.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge